# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14 CR 333 RLW / DDN |
| ) | |
| FREDRICK ERNEST GRAHAM, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND RECOMMENDATION

The pretrial motions of the parties were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b). Pending for disposition are the motions of defendant Frederick Ernest Graham:

(a) *pro se* to dismiss the indictment for violating the Double Jeopardy Clause (Doc. 32);

(b) *pro se* for a bill of particulars (Doc. 33);

(c) to dismiss the indictment on statutory and constitutional grounds (Doc. 35);

(d) *pro se* to exclude evidence under Federal Rule of Evidence 403 (Doc. 36); and

(e) to suppress physical evidence and statements (Docs. 14 oral, 21, 24).

Also pending is the oral motion of the United States for a determination by the court of the admissibility or not of any arguably suppressible evidence (Doc. 15). An evidentiary hearing was held on January 28, 2015.

Defendant is charged by indictment in one count with being a felon in possession of a firearm on September 3, 2014, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.)

### (a) *Pro se* motion to dismiss based on Double Jeopardy Clause

Defendant has moved *pro se* to dismiss the indictment on double jeopardy grounds. He argues that the federal indictment violates the Double Jeopardy Clause of the federal Constitution, because earlier Missouri state criminal charges arising out of the same facts upon which the federal charge is based, were dismissed against him in the Missouri Circuit Court. (Doc. 32 at 2.)

The protection against double jeopardy is found in the Fifth Amendment of the United States Constitution which states in pertinent part:

> [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb;

U.S. Const. amend V.

Defendant was charged in the Circuit Court of the City of St. Louis with unlawful possession of a firearm, unlawful use of a weapon, and resisting or interfering with a felony arrest. (Doc. 44-1.) On October 22, 2014, the instant federal indictment was returned by the federal grand jury. On November 4, 2014 the State of Missouri filed a memorandum of nolle prosequi, thereby dismissing the state charges. (Id.) He argues that the federal charge violated the federal constitutional prohibition of double jeopardy.

This argument is without merit, because the federal constitutional Double Jeopardy Clause only prohibits the same governmental entity from putting the same person in jeopardy more than once for the same offense. The prosecution of an individual by separate governmental entities or sovereigns for the same offense does not violate the federal Constitution. United States v. Leathers, 354 F.3d 955, 959-60 (8th Cir. 2004). An exception to this principle occurs when one government acts as the agent of another government; however, mere cooperation between separate governments does not rise to the level of a sham prosecution by one government on behalf of the other. Leathers, 354 F.3d at 960. No factual basis for avoiding the application of the dual sovereignty principle has been established by defendant.

### (b) *Pro* se motion for a bill of particulars

Defendant, pro se, has moved for a bill of particulars, arguing the indictment is not specific enough to allow him to prepare a proper defense and avoid surprise at trial. (Docs. 33, 49.) "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." United States v. Steffen, 687 F.3d 1104, 1109 (8th Cir. 2012) (quoting United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993)).

The instant indictment alleges all the essential elements of the charged violation of 18 U.S.C. § 922(g)(1): defendant (1) after having been convicted of an offense punishable by imprisonment for more than one year, (2) knowingly (3) possessed a firearm (4) in interstate or foreign commerce. United States v. Jones, 266 F.3d 804, 813 (8th Cir. 2001).

A defendant may request a bill of particulars if the "indictment does not provide enough information to prepare a defense . . . ." United States v. Huggans, 650 F.3d 1210, 1220 (8th Cir. 2011). The court may direct the government to file a bill of particulars under Federal Rule of Criminal Procedure 7(f). If information regarding the specific charge is available from other sources such as hearings and discovery provided by the government, the need for a bill of particulars is eliminated. See e.g., United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002) (government's responses to defendant's requests were sufficient to prevent surprise and render a bill of particulars unnecessary); Fleming, 8 F.3d at 1265 (holding the superseding indictment and pre-trial evidentiary hearing provided defendant with sufficient knowledge of the charges against him).

"A bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present in trial." Id. (quoting United States v. Livingstone, 576 F.3d 881, 883 (8th Cir. 2009)); United States v. Fassnacht, 332 F.3d 440, 446 (7th Cir. 2003) ("the defendant's constitutional

3

right is to know the offense with which he is charged, not to know how it will be proved.") (internal citations omitted); United States v. Tyler, 42 Fed. App'x 186 (10th Cir. 2002) ("Significantly, a defendant is not entitled to notice of all the *evidence* the government intends to produce, but only the *theory* of the government's case") (internal citations omitted).

Whether the one-count indictment alleged information sufficient to enable defendant Graham to defend against the charge, e.g., the nature of the prior offense and a description of the charged firearm, more than sufficient information has been provided to him by the evidentiary record, including the hearing evidence described below. Defendant argues that the state and federal prosecution records against him include contradictory information. Whether or not such is the case, deciding the truth of the case will be the purpose of a jury trial in this case.

Because the federal indictment is legally sufficient on its face, the court should not further investigate to determine whether the indictment is supported by legally obtained and sufficient evidence. United States v. Calandra, 414 U.S. 338, 349-52 (1974); Costello v. United States, 350 U.S. 359, 363-64 (1956).

The motion for a bill of particulars is denied.

### (c) Motion to dismiss on statutory and constitutional grounds

Defendant moves to dismiss the indictment on statutory and constitutional grounds.

I.  Challenge to predicate convictions under 18 U.S.C. § 922(g)(1)

Defendant argues that a 2014 amendment to the Missouri Constitution allows felons convicted only of violent offenses to be stripped of their right to possess a firearm. This, he argues, in turn restricts the reach of 18 U.S.C. § 922(g)(1), because § 922(g)(1) depends at least in part on the state's firearm restrictions. 18 U.S.C. § 922(g)(1), under which defendant is charged, provides:

(g) It shall be unlawful for any person--

> (1) who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year;
>
> . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

> The relevant Article 1, § 23 of the Missouri Constitution states:
>
> That the right of every citizen to keep and bear arms, ammunition, and accessories typical to the normal function of such arms, in defense of his home, person, family and property, or when lawfully summoned in aid of the civil power, shall not be questioned. The rights guaranteed by this section shall be unalienable. Any restriction on these rights shall be subject to strict scrutiny and the state of Missouri shall be obligated to uphold these rights and shall under no circumstances decline to protect against their infringement. Nothing in this section shall be construed to prevent the general assembly from enacting general laws which limit the rights of convicted violent felons or those adjudicated by a court to be a danger to self or others as a result of a mental disorder or mental infirmity.

V.A.M.S. Const. Art. 1, § 23 (Aug. 5, 2014).

Defendant's argument that Article 1, § 23 of the Missouri Constitution limits the reach of § 922(g)(1) is without merit. Under §922(g)(1) a person need only be convicted by any court of a crime punishable by one year or more. Federal firearm laws "focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." Lewis v. United States, 445 U.S. 55, 67 (1980) (emphasis added). "Congress focused on the nexus between violent crime and the possession of a firearm by any person with a criminal record." Id. The plain language of the statute does not limit convictions to only those which are violent. See United States v. Akens, 602 F.3d 904, 907 (8th Cir. 2010) (possession of a controlled substance); DeRoo v. United States, 223 F.3d 919, 922, 925-26 (8th Cir. 2000) (sale of a controlled substance). A conviction is sufficient if the defendant may be punishable by

imprisonment exceeding one year. United States v. Tankersley, 374 F.3d 721, 722 (8th Cir. 2004) (only requires the possibility of serving over one year, not actually serving over one year). Additionally, this court has held "the right to possess a firearm under state law does not affect the ability of the federal government to restrict this right." United States v. Niccum, No. 4:09 CR 00171 ERW, 2009WL1382941, at *1 (E.D. Mo. May 14, 2009) (citing Caron v. United States, 524 U.S. 308, 315 (1998)).

Graham has three qualifying convictions. In 2001 he was convicted in federal court of carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Docs. 35 at 1, 38 at 1.) This is punishable by a term of imprisonment of not less than five years. 18 U.S.C. § 923(c)(i). He was convicted in Missouri state court 2008 of possession of a controlled substance, a class C felony under Missouri law, Mo. Rev. Stat. § 195.202. (Docs. 35 at 1, 38 at 1.) This is punishable by not less than three but not more than ten years imprisonment. Mo. Rev. Stat. § 558.011. In 2010 he was convicted in Missouri state court of damaging jail property, a class D felony, Mo. Rev. Stat. § 221.353. (Docs. 35 at 1, 38 at 1.) This is punishable by a term not to exceed seven years. Mo. Rev. Stat. § 558.011. Any of these convictions can be a predicate offense under 18 U.S.C. § 922(g)(1) because each is punishable by a term of imprisonment exceeding one year.

II.   Challenge under the Second Amendment

Defendant's second argument is that 18 U.S.C. § 922(g) is unconstitutional on its face for violating the right to bear arms under the Second Amendment to the United States Constitution. (Doc. 35 at 5-6.) The Second Amendment provides, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. The United States Supreme Court held that the right to bear arms is an individual one. District of Columbia v. Heller, 554 U.S. 570, 592 (2008); McDonald v. City of Chicago, 561 U.S. 742 (2010) (the Second Amendment right to possess a handgun in the home for self-defense is

incorporated into the Due Process Clause of the Fourteenth Amendment and thereby is applicable to the States). After these Supreme Court holdings, the Eighth Circuit denied facial challenges to § 922(g) under the Second Amendment. "[I]t is well settled that Congress did not violate the Second Amendment or exceed its authority under the Commerce Clause when enacting § 842(i) and § 922(g) . . . ." United States v. Joos, 638 F.3d 581, 586 (8th Cir. 2011); see, e.g., United States v. Seay, 620 F.3d 919, 925 (8th Cir. 2010) (listing cases); United States v. Irish, 285 Fed. App'x 326, 327 (8th Cir. 2008) (per curiam). The Second Amendment guarantees "the right of *law-abiding responsible* citizens to use arms in defense of hearth and home." United States v. Bena, 664 F.3d 1180, 1183 (8th Cir. 2011) (quoting Heller, 554 U.S. at 635). In dicta, the Supreme Court also addressed the ability of the government to prohibit firearm possession by felons, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." Heller, 554 U.S. at 626.

Defendant's claim that § 922(g) is unconstitutional fails.

For the aforementioned reasons defendant's motion to dismiss the indictment on statutory and constitutional grounds should be denied.

### (d) *Pro se* **motion to exclude evidence and testimony under FRE 403**

Defendant, pro se, has moved to exclude all evidence seized and to exclude the testimony of Dets. Manley and Klipsch under Federal Rule of Evidence 403 as prejudicial, confusing, or a waste of time. (Doc. 32, 36.) Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

The admissibility of evidence is left to the broad discretion of the trial court. United States v. Jiminez, 487 F.3d 1140, 1145 (8th Cir. 2007). The trial judge has great deference in balancing the evidence's probative value with its prejudicial effect. Id.;

United States v. Lupino, 301 F.3d 642, 646 (8th Cir. 2002). Rule 403 often requires "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." Sprint/United Mgmt. v. Mendelsohn, 522 U.S. 379, 384 (2008). Whether evidence is admissible under the balancing test of Federal Rule of Evidence 403 is a matter for the District Judge to determine at trial. The motion is denied without prejudice.

### (e)     Motions to suppress evidence

From the evidence adduced during the evidentiary hearing, the undersigned makes the following findings of fact and conclusions of law:

### FACTS

1.     As of September 3, 2014, Det. Gregory Klipsch had been an officer approximately six years. He had been working in the St. Louis Metropolitan Police Department's Special Operations Division since June or July of 2014. Det. Klipsch attended the police academy and continues to attend department training and continuing education seminars.

2.     As of September 3, 2014, Det. Lawrence O'Toole had been a St. Louis Metropolitan Police Officer for seven years, and had been in the Special Operations Division for three years.

3.     On September 3, 2014 Det. Klipsch was working a 6:00 p.m. to 2:00 a.m. shift patrolling the Fifth Police District in St. Louis with his partner, Det. Matthew Manley. The Fifth District had recently seen an increase in homicides, robberies, assaults, and other crimes involving firearms. The Special Operations Division is often assigned to districts with high crime rates and supplements the primary patrol officers.

4.     Det. Klipsch was in a Chevrolet Impala that had no outer markings or lights that would indicate that it was a police vehicle. It had police lights in the interior of the vehicle and overall it otherwise resembled a regular police vehicle. Both detectives were

<mark>8</mark>

dressed in civilian clothes, but wore at least one item of clothing identifying them as police.

5. At approximately 11:30 p.m., Det. Klipsch was driving west in the 5000 block of Romaine Place. Det. Manley was in the passenger seat. Det. Klipsch noticed Graham walking west on Romaine Place, in front of the officers' car, in the middle of the street. Graham was the only person in the area at this time.

6. Graham moved onto the sidewalk and continued to walk away from the police car. Det. Klipsch observed Graham continuing to look over his shoulder, monitoring the detectives' location. Additionally, Graham was repeatedly adjusting and pulling at his left-side waistband.[1]

7. Graham entered the front yard at 5837 Romaine Place. This house has two sets of stairs, the first leading up to a chain-link fence with a gate and a second set leading up to the front door. Graham went up both sets of stairs and stood in front of the front door. He did not knock or reach for a key, as to indicate this was his residence.

8. The detectives found Graham's behavior suspicious: walking alone, in the middle of the street, late at night in a high crime area; repeatedly looking over his shoulder to observe where the detectives were; and, repeatedly adjusting and reaching at his waistband.

9. Det. Klipsch stopped the car in front of 5837 Romaine Place. Det. Manley sat on the side of the car closest to Graham. Det. Manley called out to Graham, identifying himself as a police officer and asking if Graham lived at the house. Graham stated that he did. Det. Manley asked what the address of the house was. Graham did not immediately answer, but looked at the house and then at the mailbox. Then Graham looked down the street. Det. Manley asked again if he lived there and Graham stated it was his sister's house. Graham continued to look back and forth down the street.

---

[1] Det. Klipsch believed that, based on his experience, constantly adjusting and pulling at one's waistband could indicate an attempt to conceal a weapon.

10. As Dets. Manley and Klipsch exited their vehicle, Graham grabbed at his waistband with his left hand and walked down one set of steps away from front of the house. As soon as he exited the front gate, he ran east across the yard of the neighboring abandoned house and into the adjacent vacant lot.

11. Det. Klipsch ran after Graham, following him into the vacant lot. Det. Manley got into the driver's side of the police vehicle and drove to the neighboring street, Ridge Avenue, attempting to cut off Graham's escape.

12. As Graham ran into the vacant lot Det. Klipsch followed using a flashlight to illuminate his way. Det. Klipsch observed Graham remove a pistol from his waistband. Det. Klipsch ordered Graham to stop. Graham did not stop, and while continuing to run through the vacant lot, he threw the pistol to the ground into the grass in the lot. Graham did this with the intention that the pistol not be connected with him by the police. Det. Klipsch did not stop at this time to retrieve the pistol. He ordered Graham to stop several more times. But Graham ran on.

13. After running through the vacant lot and along the side of a house, Graham emerged on Ridge Avenue. Det. Klipsch again ordered Graham to stop and told Graham that if he did not stop, he would use a taser. Graham kept running and the detective tased him. Both taser prongs properly deployed and struck Graham. Graham immediately fell to the ground and received an abrasion to his face from the fall.

14. Upon reaching Graham, Det. Klipsch placed him under arrest and handcuffed him. Det. Klipsch then searched Graham's person and found a ski mask and gloves, Government Exhibit MH-5, in the pocket of Graham's cargo shorts.

15. Det. Klipsch then offered Graham medical attention but Graham refused it. Graham did not appear disoriented, groggy, sleepy or in pain after being tased.

16. Det. Manley quickly arrived at the scene and with Graham sitting on a set of steps of a house on Ridge Avenue, orally read Graham his <u>Miranda</u> rights from a preprinted card as follows:

You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to a lawyer and have him or her with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed for you before any questioning, if you so desire. You can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand these rights?

Graham understood these rights and orally stated this to Det. Manley. He also told the detective that he would waive his rights.

17. Next, the detectives asked Graham why he ran. Graham replied that he ran because he had outstanding arrest warrants and that he could not have a gun because he had served both state and federal prison time. These were the only statements Graham made while at the scene with Dets. Manley and Klipsch.

18. Det. Klipsch radioed a request for transportation of Graham to the St. Louis City Justice Center. Upon arrival of additional officers, Dets. Manley and Klipsch looked for the weapon Det. Klipsch saw Graham throw down while running. The detectives traced Graham's path back through the vacant lot. Because the vacant lot was dark, both detectives used flashlights to search the area. Det. Manley located the weapon, a 9mm Sig Sauer semi-automatic pistol with a loaded magazine, in the vacant lot and seized it as evidence. (Gov. Ex. MH-5.)

19. Graham was transported from the Ridge Avenue scene to the St. Louis City Justice Center for booking. Upon arrival at the Justice Center, Graham complained to police personnel that his shoulder hurt and asked for medical attention.

20. Dets. O'Toole and Manley took Graham to St. Alexius Hospital for examination. While being transported to the hospital, Graham made no statements.

21. Graham was admitted to the hospital emergency room. He was immediately attended to by a nurse. Graham was handcuffed to the bed for the majority of the hospital stay. He was not handcuffed when the doctor examined him and during x-rays. The detectives remained within sight of Graham during the entire visit.

22. Graham was discharged from the hospital later on September 3, 2014. While the hospital was processing Graham's discharge papers, without being asked any question, Graham asked Det. Manley if he had been the other officer Graham saw when Graham was standing on the front porch. Manley answered in the affirmative. Graham then stated that he had thought about shooting Det. Manley then and that a shot from his "Sig" would have hurt too.

23. After Graham made these statements to Det. Manley he became very quiet and was give his hospital discharge papers. Dets. Manley and O'Toole then transported Graham back to the St. Louis City Justice Center. No statements were made during the trip between the hospital and jail.

## **DISCUSSION**

Initial questioning

The Fourth Amendment provides in relevant part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .

U.S. Const. amend. IV.

A police officer is free to ask questions or engage in conversation with any citizen and the encounter does not become a seizure under the Fourth Amendment until some restraint of liberty has occurred. Florida v. Bostick, 501 U.S. 429, 434 (1991); U.S. v. Stewart, 631 F.3d 453, 456 (8th Cir. 2011). As long as "a reasonable person would feel free to disregard the police and go about his business," as defendant did in this case, no seizure requiring a warrant has occurred. United States v. Hayden, 759 F.3d 842, 846-47 (8th Cir. 2014) (shining a light upon suspects and identifying themselves as police was not a seizure).

Dets. Manley and Klipsch observed Graham walking along Romaine Avenue and followed him in their car as he entered the front yard of 5837 Romaine Place and walked up to the front door. They needed no warrant to make these observations. And they

needed no warrant to ask him if he lived at or knew the address of the house he had approached. Det. Manley did not attempt to stop Graham from continuing his activities, until after he ran off from the officers. No evidence indicated the detectives acted to prevent Graham from entering the residence. Neither detective used any show of force or authority to prevent Graham from leaving or to force him to answer their questions.

Interaction at 5837 Romaine Place

The police may stop a subject for a brief period of time to conduct further investigation if the police have a reasonable, articulable factual basis to suspect that the subject was engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 21 (1968); Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000); United States v. Gilliam, 520 F.3d 844, 846 (8th Cir. 2008). This reasonable suspicion must be based on the totality of the circumstances known to the police. United States v. Cortez, 449 U.S. 411, 418 (1983); United States v. Castro-Gaxiola, 479 F.3d 579, 583 (8th Cir. 2007). There is no exhaustive list of factors that an officer can consider to assess reasonable suspicion. See e.g., United States v. Hightower, 716 F.3d 1117, 1121 (8th Cir. 2013) (high-crime area); United States v. Stachowiak, 521 F.3d 852, 856 (8th Cir. 2008) (nervous behavior); United States v. Bailey, 417 F.3d 873, 877 (8th Cir 2005) ("time of day or night, location of suspect parties, and parties' behavior when they become aware of the officer's presence") (internal citations omitted).

Additionally, actions that may appear innocent to an untrained observer can be combined to allow permissible deductions of criminal activity by an officer based on the officer's training and experience. Cortez, 449 U.S. at 419. Reasonable suspicion is, however, more than the officer's "inchoate and unparticularized suspicion or hunch." United States v. Logan, 362 F.3d 530, 533 (8th Cir. 2004) (quoting United States v. Johnson, 171 F.3d 601, 603-04 (8th Cir. 1999)).

In this case, Dets. Manley and Klipsch were trained and experienced. With this training and experience, they knew reasonable, articulable facts that supported their

reasonable suspicion that Graham was involved in some criminal activity when he was on the porch at 5837 Romaine, before he fled. First, Graham was walking alone, in the street, late at night, in a neighborhood that recently saw an increase in crime. Second, Graham repeatedly pulled at the left side of his waistband, which could indicate an attempt to conceal a weapon. Third, Graham continuously looked over his shoulder to watch the oncoming unmarked police vehicle. Fourth, Graham first told the detectives he was going into his own home but could not provide them the address. Fifth, Graham never reached for his keys or otherwise attempted to enter the home. Finally, Graham changed his story from 5837 Romaine Place being his house to being his sister's. Taken separately, these actions could be entirely innocent, but together they formed a reasonable suspicion allowing Dets. Manley and Klipsch to stop Graham for a brief investigatory stop.

### Graham's flight

Dets. Manley and Klipsch exited their vehicle to conduct an investigatory stop, but before they could stop Graham, he fled. Headlong flight from officers can be a factor in an officer's determination of reasonable suspicion. Wardlow, 528 U.S. at 124-25. "It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Id. at 124. Therefore, even if Dets. Manley and Klipsch did not have reasonable articulable suspicion of criminal activity before Graham fled from them, they certainly did after he began running away.

### Graham's arrest

The detectives placed Graham under arrest without a warrant only after they had probable cause to believe an offense had been committed by Graham. An arrest does not happen until a reasonable person would no longer "feel free to disregard the police and go about his business." Bostick, 501 U.S. at 434 (internal citations omitted); Stewart, 631 F.3d at 456. Furthermore, seizure does not occur when a policeman merely orders a

fleeing subject to stop. California v. Hodari D., 499 U.S. 621, 626 (1991). The seizure under the Fourth Amendment occurs when the subject's freedom of movement is restricted by the police. Id. at 629.

In order to justify a warrantless arrest, "the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed." Beck v. Ohio, 379 U.S. 89, 96 (1964) (internal citation omitted); United States v. Dembry, 535 F.3d 798, 800-01 (8th Cir. 2008).

Upon fleeing from police Graham ran past the neighboring vacant house and into a vacant lot where Det. Klipsch observed him remove a firearm from his waistband and throw it into the grass. Only after stopping Graham with a taser did Det. Klipsch place him in handcuffs, effectively arresting him. In these circumstances, Det. Klipsch had probable cause to believe that Graham was illegally in possession of a firearm.

Seizure of the mask and gloves

The seizure of the mask and gloves from defendant's person should not be suppressed. This is because they were seized in a proper search incident to a lawful arrest, which is an exception to the Fourth Amendment warrant requirement. United States v. Perdoma, 621 F.3d 745, 750 (8th Cir. 2010). Officer safety and evidence preservation reasonably allow for a search incident to arrest. Id. A search incident to arrest may extend to "the arrestee's person and the area within his immediate control." Id.. Det. Klipsch placed Graham under arrest and in handcuffs after incapacitating him with a taser. Then Det. Klipsch conducted a pat down search of Graham's pants pocket and discovered a ski mask and gloves. This search was reasonable under the Fourth Amendment and these items should not be suppressed.

Seizure of the firearm

The firearm Graham discarded while fleeing the police should not be suppressed. The protections of the Fourth Amendment only apply to items and actions for which a

person has a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). When someone discards an item, with the intention of no longer having a protectable interest in it, the subject is considered to have abandoned the item and he thereby loses Fourth Amendment protections in it. Hodari D., 499 U.S at 628-29 (cocaine abandoned during a chase not fruit of a seizure); United States v. Taylor, 462 F.3d 1023, 1026 (8th Cir. 2006) (cell phone, bag, and gun dropped while fleeing were abandoned and not subject Fourth Amendment protections).

After the detectives exited their vehicle, presumably to conduct an investigatory stop, Graham fled on foot and threw the firearm into the grass of a vacant lot as he continued to flee the police. His intention in throwing it down was to lose his connection to the firearm, which he later impliedly told the police he could not lawfully possess because of the felon status. The firearm should not be suppressed as evidence against him.

Graham's Statements

Defendant made pre-arrest statements to the police (Finding 9, above) as well as statements after his arrest (Findings 17, 22).

Defendant's statements before his arrest should not be suppressed. They were voluntary, because they were not coerced by the police in the sense that defendant's ability to remain silent was not overborne by the police. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); Moran v. Burbine, 475 U.S. 412, 421 (1986). And there was no need to advise defendant of his Miranda rights before asking him if he lived at that location, because he was not then in custody, as otherwise required by Miranda v. Arizona, 384 U.S. 436, 477-78 (1966). California v. Beheler, 463 U.S. 1121, 1125 (1983).

Defendant's statements to the police after his arrest, including those made at the hospital, should not be suppressed. When he made these statements, Graham was under arrest and therefore the requirements of Miranda v. Arizona applied. Miranda requires

that a person in custody, who is subjected to interrogation, must first be advised of his constitutional rights to remain silent and to have counsel present. Miranda v. Arizona, 384 U.S. at 477-78. A waiver of Miranda rights must be done voluntarily, knowingly, and intelligently. North Carolina v. Butler, 441 U.S. 369, 373; United States v. Binion, 570 F.3d 1034, 1040 (8th Cir. 2009). The waiver can be express or implied from the defendant's actions. Butler, 441 U.S. at 374-76. A defendant answering police questions after being advised of his rights can indicate that he waives his Miranda rights. Binion, 570 F.3d at 1040. Furthermore, when a defendant initiates a conversation, it is presumed he has waived these rights. Homan v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000). Such waivers can be oral or in writing. Butler, 441 U.S. at 373; Thai v. Mapes, 412 F.3d 970, 976-77 (8th Cir. 2005).

On Ridge Avenue Det. Manley advised Graham of his rights orally by reading them to him from a preprinted card. He then asked Graham if he understood his rights. Graham understood them and so advised Manley. Graham also stated he would waive them. Then, in response to questions, he explained why he ran from the police. Graham's actions indicate that he voluntarily, knowingly, and intelligently waived his rights at the scene. Further, these statements were not coerced by the police, but were voluntarily made. Therefore, they should not be suppressed.

Soon after being advised of his Miranda rights at the scene of his arrest, Graham initiated the conversation with Det. Manley without any questioning by the detectives. Graham asked Manley whether he was the other officer present when Graham was on the porch on Romaine Avenue. After Manley answered in the affirmative, Graham stated he could have then shot Manley with his firearm. Having been previously advised of his right to remain silent, and choosing to initiate a conversation with Det. Manley, Graham voluntarily waived his rights to remain silent and to have a lawyer present. And these statements were entirely the product of his volition and were not coerced by the police. Therefore, the statements he made at St. Alexius Hospital should not be suppressed.

17

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the oral motion of the United States for a determination by the court of the admissibility or not of any arguably suppressible evidence (Doc. 15) is denied as moot.

**IT IS FURTHER ORDERED** that the *pro se* motion of defendant Fredrick Ernest Graham for a bill of particulars (Doc. 33) is denied.

**IT IS FURTHER ORDERED** that the *pro se* motion of defendant to exclude evidence under Federal Rule of Evidence 403 (Doc. 36) is denied without prejudice.

**IT IS HEREBY RECOMMENDED** that the *pro se* motion of defendant to dismiss the indictment for violation of the Double Jeopardy Clause (Doc. 32) be denied.

**IT IS FURTHER RECOMMENDED** that the motion of defendant to dismiss the indictment as constitutionally and statutorily insufficient (Doc. 35) be denied.

**IT IS FURTHER RECOMMENDED** that the motions of defendant to suppress evidence generally (Doc. 14 oral), to suppress his statements (Doc. 21), and to suppress physical evidence (Doc. 24) all be denied.

The parties are advised that they have until not later than March 27, 2015 to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

        /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 11, 2015.